Cite as 2021 Ark. App. 356

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR-21-90

| | | |
|---|---|---|
| CAMERON BRASWELL | | **Opinion Delivered** September 22, 2021 |
| | APPELANT | APPEAL FROM THE DREW COUNTY CIRCUIT COURT [NO. 22CR-20-79] |
| V. | | |
| | | HONORABLE SAM POPE, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED |

### MIKE MURPHY, Judge

A Drew County jury found appellant Cameron Braswell guilty of criminal trespass, a Class B misdemeanor, and theft of a debit card, a Class D felony. The jury sentenced him as a habitual offender to an aggregate term of fifteen years' imprisonment and fines totaling $10,250. On appeal, Braswell challenges the sufficiency of the evidence to support both convictions. In addition, Braswell challenges the constitutionality of Arkansas Code Annotated section 5-36-103(a)(3)(C)(ii) (Supp. 2021), asserting that it is void for vagueness. We affirm.

On May 18, 2020, the State charged Braswell with residential burglary, a Class B felony, and theft of a debit card, a Class D felony. A jury trial took place on November 4, 2020.

The State called five witnesses. Crystal Goodman, the victim, testified that on April 16, 2020, Braswell backed into her car in a parking lot. Two days later, when Goodman

was returning home from a friend's house, she noticed Braswell sitting in a chair in her driveway. Goodman asked him what he was doing at her home, and Braswell responded, "I didn't realize that was you that I backed into. God must have had me there for a reason." Braswell then indicated that he had something to give to her. When asked what it was, Braswell handed Goodman an item she recognized as having come from her bedroom. Goodman testified that she became scared and believed that Braswell may have been stalking her, so she called her landlord and boss, William Jones, and asked him to send the police to her house immediately.

Jones testified that he called Officer James Slaughter of the Monticello Police Department. Jones called him because he lived down the road from Goodman. Officer Slaughter testified that when he arrived, Goodman told him that Braswell had been in her home, at which point Officer Slaughter checked Braswell's pockets to see if he had taken any of Goodman's property. In Braswell's pockets, Officer Slaughter found a bag full of change, two debit cards, a family photo, a phone, and phone chargers—all property that belonged to Goodman. He said that Braswell told him that he took the items out of Goodman's house. Officer Slaughter further testified that after he left the scene, Goodman called him and told him that she found Braswell's checkbook and debit card in her bed. Officer Slaughter retrieved these items and took them to Rick Harvey, a detective with the Drew County Sheriff's Department. Officer Slaughter conceded that Braswell claimed that he believed he was at a relative's house. The relative used to live at Goodman's house, but despite Braswell's assertion, he was arrested.

Next to testify was Detective Rick Harvey. Harvey testified that while Braswell was at the jail, Braswell told him that he took a photo of Ms. Goodman, an old debit card, a phone charger, and another personal item from Goodman's home. Defense counsel focused on the use of the term "old debit card." "[S]o that was [Braswell's] words that called it an 'old debit card?'" In response, Harvey said, "Yes sir. He stated an old debit card."

Last to testify was the chief deputy sheriff, Brian Slaughter. Chief Deputy Slaughter testified that Braswell told him that he knew Goodman from a dating site and could prove it through some pictures on his phone. Chief Deputy Slaughter then testified that he went and retrieved Braswell's phone to give him an opportunity to show him. However, Braswell never found the pictures.

The State rested. Braswell's counsel moved for directed verdict on both charges. Regarding the charge of residential burglary, Braswell argued that the State failed to prove he entered the home of another person. Specifically, he asserted that the State failed to prove that he did it with the intent to commit any offense punishable by confinement or to commit any crime because he was operating under the mistaken belief that it was someone else's home. The court denied the motion, stating there was sufficient evidence to create a factual issue for the jury.

Regarding the charge of theft of a debit card, Braswell argued that the State failed to meet its burden of proving that he had any intent to permanently deprive the owner of any of the property found on him. Further, he asserted that the State failed to prove that any items of property he exercised control over were "debit cards" because the cards in question were prepaid cards and not associated with Goodman's bank account. Because the statute

3

does not define "debit card," Braswell urged the court to adopt the definition cited in the Fair Gift Card Act, which defines a "debit card" as "any card issued by a financial institution to a consumer for use in initiating an electronic fund transfer from the account of the consumer at the financial institution for the purpose of transferring money between accounts or obtaining money, property, labor or services." Ark. Code Ann. § 4-88-702 (Repl. 2011).

From the bench, the court ruled,

> I'm not going to dismiss the theft charge. I think it is a fact question. It appears the evidence supports these are debit cards, and the statute doesn't have its own definition that's referenced to the commercial code, 4-88-702. Certainly it is persuasive authority for Mr. Leonard's position, but it's not binding. Since there's no definition in the criminal statute and the evidence shows that these cards say they are debit cards issued by people who normally issue those things, Visa or Mastercard, I think that it creates a factual issue for the jury.

The defense rested, and Braswell was found guilty of criminal trespass (a lesser-included offense of residential burglary) and theft of a debit card.

On appeal, Braswell argues that (1) there was insufficient evidence to support his criminal-trespass conviction; (2) there was insufficient evidence to support his theft-of-a-debit-card conviction; and (3) Arkansas Code Annotated section 5-36-103(a)(3)(C)(ii) is unconstitutionally vague for failure to define "debit card."

A directed-verdict motion is a challenge to the sufficiency of the evidence. *Warden v. State*, 2011 Ark. App. 75, 381 S.W.3d 140. The test for determining the sufficiency of the evidence is whether there is substantial evidence to support the verdict. *Id*. Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Id*. In reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State

4

and consider only the evidence that supports the verdict. *Id*. We will not weigh the evidence or assess credibility, as those are questions for the jury. *Id*.

A person commits the offense of criminal trespass if he purposely enters or remains unlawfully in or upon the premises owned or leased by another person. Ark. Code Ann. § 5-39-203(a)(2) (Supp. 2021). To enter or remain unlawfully means to enter or remain in or upon the premises when not licensed or privileged to enter or remain in or upon the premises. Ark. Code Ann. § 5-39-101(3)(A) (Supp. 2021).

Braswell contends that the jury was left to speculate as to whether he purposely entered or remained unlawfully in Goodman's home because he mistakenly believed it was someone else's. However, the testimony at trial indicated that Braswell knew he was entering Goodman's home.

Goodman testified that she and Braswell had been involved in a car accident two days prior to the break-in. When Goodman arrived home and found Braswell sitting in her driveway, he recognized her and said, "God must have had me there for a reason," and additional evidence indicated that Braswell knew Goodman from a dating website. Because there is evidence that Braswell knew Goodman from prior occurrences, the jury could have reasonably concluded without resorting to speculation that he purposely entered or remained unlawfully in Goodman's home.

Second, in challenging his conviction for theft of a debit card, Braswell asserts that the evidence was insufficient to support the "debit card" element of his conviction.

A person commits the offense of theft of property if he knowingly "[t]akes or exercises unauthorized control over or makes an unauthorized transfer of an interest in the

property of another person with the purpose of depriving the owner of the property." Ark. Code Ann. § 5-36-103(a)(1) (Supp. 2021). Theft of property is a Class D felony if the property is a debit card or debit-card account number. Ark. Code Ann. § 5-36-103(a)(3)(C)(ii).

Here, Braswell contends that there was insufficient proof that the cards in question were "debit cards." However, the State presented substantial evidence to the contrary. Photos admitted into evidence showed that both cards had the word "debit" clearly embossed on the front along with a sixteen-digit account number. These cards also had the names and logos of the issuing financial institutions. Further, the testimony of Detective Harvey indicated that Braswell, in his own words, stated that he took a "debit card" from Goodman. This is sufficient evidence from which the jury could have reasonably concluded that Braswell intended to take Goodman's debit card.

Finally, Braswell argues that because "debit card" is not defined anywhere in the Arkansas Criminal Code, Arkansas Code Annotated section 5-36-103(a)(3)(C)(ii) is unconstitutionally void for vagueness. This issue is not preserved for review.

In criminal cases, issues raised, including constitutional issues, must be presented to the circuit court to preserve them for appeal; the circuit court must have the benefit of the development of the law by the parties to adequately rule on the issues. *Gooch v. State*, 2015 Ark. 227, 463 S.W.3d 296. We will not consider an argument raised for the first time on appeal or that is fully developed for the first time on appeal. *Id.* Furthermore, a party cannot change his or her grounds for an objection or motion on appeal but is bound by the scope of arguments made at trial. *Id.*

Here, Braswell's argument is not preserved because he did not argue below that the statute was void for vagueness. At trial, Braswell made the argument that the court should grant his motion for directed verdict because "debit card" is not defined in the statute and thus that the State could not meet its burden on that element of the offense. He did not, however, make any indication that he was challenging the statute as being unconstitutionally vague. To be certain, the words "vague" and "constitution" are completely absent from Braswell's discussion below. A constitutional argument was not presented to the circuit court. Therefore, Braswell is precluded from now making it on appeal.

Affirmed.

BROWN and GLADWIN, JJ., agree.

*Potts Law Office*, by: *Gary W. Potts*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Jacob H. Jones*, Ass't Att'y Gen., for appellee.